**SIGNED THIS: March 13, 2012**

_____
**Thomas L. Perkins
United States Chief Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DANIEL A. KOSTH, | ) | Case No. 09-82212 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| SCOTT M. POSNANSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 09-8131 |
| | ) | |
| DANIEL A. KOSTH, | ) | |
| | ) | |
| Defendant. | ) | |

**O P I N I O N**

This matter is before the Court after trial on the complaint filed by Scott M. Posnanski, the Plaintiff (POSNANSKI), against Daniel A. Kosth, the Debtor (DEBTOR), objecting to both the dischargeability of his debt and the DEBTOR'S discharge. POSNANSKI objected to the DEBTOR'S discharge on the grounds that the DEBTOR made

false statements both in his bankruptcy case and in a corporate bankruptcy case and gave false testimony in the corporate case. POSNANSKI also sought a determination that his debt, albeit unliquidated, was nondischargeable pursuant to sections 523(a)(2)(A), (a)(4) and (a)(6), arising from the DEBTOR'S fraudulent representations that he would acquire an ownership interest in the DEBTOR'S business, and by the DEBTOR engaging in willful and malicious conduct.

*BACKGROUND*

The DEBTOR is a high school graduate with a work history consisting of several different types of jobs. In 1980, he worked as a real estate agent, selling real estate in California. From 1981 through 1985, he marketed secured credit cards and started credit repair services. Beginning in 1986, he became licensed to sell life and health insurance. In 1987, he was convicted of a crime in connection with his brother's use of fraudulent credit cards in the DEBTOR'S business in Moline, Illinois, and spent one year in prison. He later served three years in prison after failing, he asserts, to disclose that his wife held an ownership interest in his business in connection with a FEMA loan he obtained as a general contractor. In 2001, while in prison in Oxford, Wisconsin, the DEBTOR became acquainted with POSNANSKI, who had been convicted of bank fraud.

In August, 2003, the DEBTOR formed Sports Media, Inc., a sports marketing agency engaged in the sale of advertising on cup holders and souvenir cups at stadiums and arenas around the country. The DEBTOR was the President and CEO of the corporation. Sports Media, Inc., would order advertising on behalf of clients and would be billed by the stadium or sports teams. Sports Media, Inc., would then invoice its advertisers. In 2004,

2

POSNANSKI, working as an independent computer consultant for Northrop Grumman, was approached by the DEBTOR. On April 23, 2004, the DEBTOR and POSNANSKI entered into a preorganization agreement for Sports Media, LLC. According to the agreement, the company was to be a holding company to own, operate and manage the sports marketing of products such as cup holders, security and interactive ad cups and 3D souvenir collectors' cups. According to a schedule attached to the agreement, the capital contributions and the percentage of ownership were as follows: DEBTOR was to make an initial cash contribution of $1,000 and an initial contribution of services valued at $19,000, receiving 51% ownership, and POSNANSKI was to make an initial cash contribution of $20,000 for 49% ownership. The agreement called for the execution of Articles of Organization and an Operating Agreement and recited that pending execution of those documents, the company "shall operate as a partnership." The organizational documents were never formalized.

On July 19, 2007, Sports Media, Inc., obtained a $200,000 line of credit from Southport Bank, located in Kenosha, Wisconsin. POSNANSKI guaranteed the obligation. Sports Media, Inc., partnered up with Chyron, a computer hardware/software company that provided communication devices for TV stations, broadcasting for the entertainment industry. Advertising was accomplished, in part, by Sports Media, Inc., acquiring "Chyron boxes," essentially video boxes which were placed in stadiums and other sports venues. At some point, the DEBTOR began to focus Sports Media, Inc.'s efforts on marketing Havoc Energy Drink. Although the venture had some initial success, problems began after the company was acquired by American Enterprise Development Corporation and it failed to make payments to Sports Media, Inc.

3

In 2007, when the DEBTOR moved from Chicago to the Quad Cities, his wife agreed to take out a loan in her name to build an office space onto their home for Sports Media, Inc., and Sports Media, Inc., agreed to repay the loan with monthly payments of $3,750. The DEBTOR'S wife, Teri Kosth, owns a resort called the Hillcrest Resort, which is managed by their daughter Kearsten. Kearsten also worked for Sports Media, Inc., on a commission basis. In 2008, the DEBTOR incorporated Sportrons, a company he intended to be a sports marketing agency limited to digital advertising in sports stadiums and arenas across the country. The DEBTOR continues to operate that corporation. Sports Media, Inc., ceased its operations on the date it filed bankruptcy.

The DEBTOR, represented by experienced legal counsel, authorized a Chapter 7 petition to be filed on behalf of Sports Media, Inc., on July 15, 2009. In the Statement of Financial Affairs, Sports Media, Inc.'s gross income is listed as $750,943.27 for 2007; $598,372.06 for 2008 and $207,733.65 for 2009. Questions 3(b) and (c) on the Statement of Financial Affairs, which require the debtor to set forth all payments made to creditors within 90 days in excess of $5,475 and to insiders within one year prior to the filing date, disclose only that the DEBTOR, as an insider, received $91,000 from January 1, 2008 to May 26, 2009.[1] In response to Question 10 regarding "Other transfers," the DEBTOR stated that no transfers other than in the ordinary course of business had been made within the last two years.[2] Sports Media, Inc., listed an account receivable owing from American Enterprise Development of $5,000,000, which was shown as uncollectible, and a pending

---

[1] Question 3(c) instructs all debtors to "List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders."

[2] Question 10 instructs the debtor to "List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case."

4

patent which was shown as having no value. No bank accounts were listed. Nor was any account disclosed in response to Question 11 of the Statement of Financial Affairs which requires a debtor to:

> List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold or otherwise transferred within **one year** immediately preceding the commencement of this case.

The DEBTOR, represented by the same attorney, filed an individual Chapter 7 petition on that same day. In his Statement of Affairs, the DEBTOR listed his income from Sports Media, Inc., of $13,086 for 2007; $15,000 for 2008 and $10,000 for 2009. The DEBTOR listed his interests in Sports Media, Inc., Fanz.tv, and Sportrons, as having no value. The DEBTOR listed unsecured claims totaling $2,601,347.64. POSNANSKI is scheduled as an unsecured creditor holding a claim in an "unknown" amount. The DEBTOR has not filed personal or corporate income tax returns for tax years 2008 and 2009.

No amended schedules or amendments to the Statements of Financial Affairs were filed in either bankruptcy. The Trustee, Richard E. Barber (TRUSTEE), serving as TRUSTEE in both cases, pursued American Enterprise Development Corporation in his role as TRUSTEE for Sports Media, Inc., for the account receivable and obtained a default judgment for $5,000,000, on September 1, 2011. The TRUSTEE also filed three adversary proceedings in Sports Media, Inc., to avoid certain prepetition transfers as fraudulent conveyances or preferential transfers. The TRUSTEE sued the DEBTOR'S spouse to recover the following transfers as preferential: $7,000 on April 14, 2009; $2,000 on May 1, 2009; and $7,000 on May 26, 2009. The TRUSTEE also brought an action against Anchor Lumber Company, Inc., to recover as a fraudulent transfer two transfers totaling $10,000,

5

made by Sports Media, Inc., in April, 2009, for materials supplied to Hillcrest Resort. A corrected judgment was entered in the TRUSTEE'S favor on April 12, 2011. The TRUSTEE brought a fraudulent conveyance action against Hillcrest Resort to recover two transfers on April 1, 2009, and April 14, 2009, for $5,000 each. The TRUSTEE agreed to compromise for $6,000 and a judgment was entered in that amount.

POSNANSKI filed this five-count adversary complaint seeking to have his debt determined to be nondischargeable and to deny the DEBTOR'S discharge. Count 1, brought under section 727(a)(4), alleged that the DEBTOR knowingly and fraudulently made false statements in his bankruptcy schedules and at the first meeting regarding the amount of income and property received from his corporations during the period from 2007 through 2009. In Count 2, brought under section 727(a)(7), POSNANSKI alleges that the DEBTOR, as President of Sports Media, Inc., diverted or fraudulently conveyed at least $52,500 of corporate assets to family members in early 2009; that the bankruptcy schedules filed in that case failed to disclose certain corporate bank accounts that were open during the year before the filing; and that the DEBTOR knowingly and fraudulently made false oaths in the corporate bankruptcy schedules and at the first meeting. Count 3, premised on section 523(a)(2)(A), alleges that the DEBTOR made false representations to POSNANSKI regarding the ownership status of Sports Media, Inc. Count 4, brought under section 523(a)(4), alleges that the agreement gave rise to a fiduciary relationship between the DEBTOR and POSNANSKI, and that the DEBTOR made false statements regarding the formation of the limited liability company and POSNANSKI'S equity position. Count 5, brought under section 523(a)(6), alleges that the DEBTOR, as an officer of Sports Media,

6

Inc., engaged in willful and malicious conduct in wrongfully diverting funds to other corporations and family members. Though the DEBTOR was represented by experienced bankruptcy counsel in filing the petitions for himself and for Sports Media, Inc., he proceeded *pro se* in this adversary.

POSNANSKI submitted written discovery to the DEBTOR seeking documents relating to Sports Media, Inc., and other corporations in which the DEBTOR had an ownership interest and information regarding the finances and transfers made by Sports Media, Inc. Specifically, POSNANSKI sought copies of bank statements and canceled checks for accounts held within the year preceding bankruptcy, as well as tax returns for the three years prior to bankruptcy. The DEBTOR objected to the requests seeking information regarding Sports Media, Inc., by stating that it is not a party or a defendant.[3] POSNANSKI did not seek to compel a further response.

The Court conducted the trial on October 20, 2011, and November 10, 2011. The DEBTOR and POSNANSKI were the only witnesses to testify. The DEBTOR testified that Sports Media, LLC was originally intended to be a holding or parent company for other sports marketing agencies, which would be formed in the future. He admitted that Sports Media, LLC was never formed. He testified that POSNANSKI performed work for Sports Media, Inc., as a consultant. POSNANSKI managed the line of credit at Southport Bank, until his name was removed from the checking account as an authorized signatory. The DEBTOR testified that while payments to his wife for the office space were not always made on a regular basis, that all of the payments were made and the obligation was paid

---

[3]POSNANSKI also sought the Articles of Incorporation for Sportrons, 360 Sports and Fanz.tv. The DEBTOR objected on the same grounds, responding that the entities were not parties, nor defendants, in the adversary proceeding.

off in 2009. According to his testimony, certain payments made to her represented compensation for his services. The DEBTOR testified that his daughter, Kearston, was hired by Sports Media, Inc., for certain projects and that payments she received were made in the regular course of business for services rendered. The DEBTOR testified that Sportrons was incorporated the year prior to bankruptcy. Its business plan was to become a sports marketing agency strictly with digital assets. According to the DEBTOR, the plan was not executed until 2009. The DEBTOR admitted that he first considered bankruptcy in December, 2008, though he did not contact an attorney until April, 2009. The DEBTOR testified that after he learned that POSNANSKI had written unauthorized checks to himself and his girlfriend, he removed POSNANSKI'S name from the Southport Bank account. The DEBTOR did not provide any specifics concerning these payments.

     POSNANSKI testified that he has a bachelor degree in management information systems and finance. He testified that he and the DEBTOR did not stay in touch after their release from prison. Approximately two years later, while working full-time for Northrop Grumman as a computer consultant, the DEBTOR contacted him and inquired whether he would be interested in joining him in his business as a partner, performing the IT part of the business. POSNANSKI was not aware that the DEBTOR had been in the business for almost one year as Sports Media, Inc., but believed that the business was being formed and developed as Sports Media, LLC. According to POSNANSKI, some time passed before the DEBTOR prepared and forwarded the preorganization agreement to him. POSNANSKI signed the agreement without seeking legal advice and made the required capital contribution in a number of payments over the course of the next six months to a year.

POSNANSKI testified that, in reliance on the agreement, he believed he had acquired a one-half ownership interest in the ongoing business being conducted by the DEBTOR. Beginning in 2004, he developed several applications for the business on data collection and web applications and set up email accounts and the development for email forwarding. In that role, he served as the email custodian. In 2006 and 2007, he acted as Sports Media, Inc.'s Chief Information Officer.

POSNANSKI testified that he later advanced other monies to the business, when cash was needed. Some amounts were intended as loans, which were evidenced by written agreements. POSNANSKI received some repayments. No notes or other evidence of these advances were introduced into evidence, however. He did not consider himself to be merely an employee, but a part owner of the company. He testified that he co-signed the $200,000 line of credit from Southport Bank because he believed that he was a 50% owner of the company.[4] According to his testimony, the funds were going to be used by Sports Media, Inc., to purchase Chyron boxes, which were going to be used to manage all advertising in stadiums. POSNANSKI was a signatory on the account. POSNANSKI testified that money was transferred from the line of credit to the business checking account at the DEBTOR'S direction and that checks were written at the DEBTOR'S direction and with his approval. POSNANSKI testified that his girlfriend, Robin, performed services for Sports Media, Inc., including invoicing and shipping of Chyron boxes. POSNANSKI testified that she was reimbursed for her expenses, with the approval

---

[4] Southport Bank filed a proof of claim in the Sports Media, Inc., case for $237,639.63. Attached to the claim is a copy of a $200,000 promissory note signed by Daniel A. Kosth as president of Sports Media, Inc., as well as the personal guaranty signed by Daniel A. Kosth. Both documents are dated July 19, 2007. Although the personal guaranty of Scott POSNANSKI is not attached, POSNANSKI introduced it at trial.

9

of the DEBTOR. POSNANSKI stated that he wrote checks on that account to himself and Robin for hardware, software and reimbursement of expenses, all of which were approved by the DEBTOR.

POSNANSKI testified that he inquired of the accountant for Sports Media, Inc., as to when he would be receiving tax information from the company and was advised that he would be receiving a K-1. On cross-examination, he admitted that he had previous experience in setting up a corporation and that he had held ownership interests in corporations in the past.

POSNANSKI introduced into evidence nine emails from Chase to the DEBTOR notifying him of ACH payments from Sports Media, Inc.'s account to various other accounts. Those transactions referenced in the emails may be summarized as follows:

| Date | Amount | Recipient |
|---|---|---|
| March 2, 2009 | $3,000 | D. Johnson |
| March 10, 2009 | 2,200 | Sports Media SP |
| March 12, 2009 | 7,000 | T. Kosth |
| April 1, 2009 | 7,000 | T. Kosth |
| April 3, 2009 | 1,000 | Sports Media SP |
| April 15, 2009 | 5,000 | Hillcrest Resort |
| April 29, 2009 | 3,000 | Derek Johnson |
| May 27, 2009 | 7,000 | T. Kosth |

Before addressing the legal theories, the Court will first resolve one of the primary disputes between the parties relating to POSNANSKI'S interest in the business. The preorganization agreement was admittedly executed by both parties. The DEBTOR admits that he intended at the time of its execution to form Sports Media, LLC, but failed to carry out that intent. POSNANSKI testified that he paid into the business the $20,000 capital contribution contemplated in the agreement. His testimony was credible and uncontra-

dicted. In consideration of the payment, the agreement provides that POSNANSKI was to receive a 49% ownership interest in the LLC and, until its formation, the parties would operate as partners.

The Court determines that the preorganization agreement is a valid and enforceable contract supported by adequate consideration fully paid. By its terms, the parties operated the Sports Media business as a partnership. The Court rejects the DEBTOR'S contention that POSNANSKI was merely a consultant. The DEBTOR accepted the $20,000 paid in by POSNANSKI as a capital contribution and is estopped from denying POSNANSKI his ownership interest accorded under the preorganization agreement.

## *DENIAL OF DISCHARGE*

Denying a debtor a discharge is regarded as a harsh and drastic remedy. *In re Lindemann*, 375 B.R. 450 (Bankr.N.D.Ill. 2007). Exceptions to discharge must be construed liberally in favor of the debtor and strictly against the objecting creditor in order to effectuate the fresh start policy of the bankruptcy laws. *Matter of Juzwiak*, 89 F.3d 424 (7th Cir. 1996). In exchange for that fresh start, the Bankruptcy Code requires debtors to accurately and truthfully present themselves before the court, in order to assist the trustee in the administration of the estate and to provide adequate information to creditors. *In re Hammitt*, 289 B.R. 670 (Bankr.C.D.Ill. 2001). A trustee or creditor seeking to deny a debtor a discharge bears the burden of proving each of the elements of the claim by a preponderance of the evidence. *In re Scott*, 172 F.3d 959 (7th Cir. 1999).

### *Section 727(a)(4)(A)*

Section 727(a)(4)(A) provides that:

11

>(a) The court shall grant the debtor a discharge, unless–
>***
>(4) the debtor knowingly and fraudulently, in or in connection with the case–
>(A) made a false oath or account. . . .

11 U.S.C. § 727(a)(4)(A). In order to prevail, the objector must establish by a preponderance of the evidence that (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Sholdra*, 249 F.3d 380 (5th Cir. 2001). A debtor's petition, schedules, statement of financial affairs, and statements made at a first meeting, all constitute statements made under oath for purposes of section 727(a)(4). *In re Bostrom,* 286 B.R. 352 (Bankr.N.D.Ill. 2002). A false oath may include a knowing and fraudulent omission. *In re Handel*, 266 B.R. 585 (Bankr.S.D.N.Y. 2001).

Not every error or omission in the bankruptcy schedules or statement of financial affairs is sufficient to deny a discharge. Courts recognize that innocent mistakes and inadvertent errors occur. *In re Keeney*, 227 F.3d 679 (6th Cir. 2000). To justify denial of discharge under this provision, the oath must have been knowingly and fraudulently made. In addition, an omission must relate materially to the bankruptcy case. The subject matter of a false oath is "material" if it bears a relationship to the debtor's business transactions or estate or could lead to discovery of assets or the existence and disposition of debtor's property. *In re Retz*, 606 F.3d 1189 (9th Cir. 2010). Since an admission or other evidence of direct intent is rarely available, actual intent may be established by circumstantial evidence. *Matter of Synder*, 152 F.3d 596 (7th Cir. 1998). The cumulative effect of a series or pattern of errors or omissions may rise to the level of a reckless

12

disregard for the truth sufficient to support a finding of fraudulent intent. *Stamat v. Neary*, 635 F.3d 974 (7th Cir. 2011).

POSNANSKI contends that the DEBTOR understated his income from his corporations for the years 2007 through 2009 in Paragraph 1 of the Statement of Financial Affairs in his personal bankruptcy. In response to Question 1 in the Statement of Financial Affairs, the DEBTOR listed his gross income from Sports Media, Inc., as $13,086 in 2007; $15,000 in 2008 and $10,000 in 2009. POSNANSKI asserts that the DEBTOR received substantially more funds and property from his corporations than disclosed. He also contends that he made false statements at the first meeting about that income and the receipt of property from his corporations, by affirming the truth and correctness of his bankruptcy petition.[5]

The DEBTOR'S 2007 joint income tax return was introduced into evidence. That return shows a long term capital gain from Sports Media, Inc., of $40,066. No income is reported for Sports Media, Inc. The adjusted gross income of $13,086 reported on the return is the same amount disclosed by the DEBTOR for 2007 in response to Question 1 on the Statement of Financial Affairs. The DEBTOR testified that his 2008 tax return had been completed the week prior to trial and that a copy had been provided to POSNANSKI, though it had not yet been filed. That return was not admitted into evidence, nor did POSNANSKI inquire concerning it at trial.

POSNANSKI introduced no evidence to carry his burden of proof that the DEBTOR understated his gross income in the years preceding the petition. Moreover, it is uncertain

---

[5] The transcript of the first meeting was not introduced into evidence. Presumably, POSNANSKI'S contentions regarding false statements made in his sworn testimony during the first meeting refer only to an affirmation of the correctness of the petition and schedules filed in the case.

what impact such an omission would have had on the administration of the estate. Similarly, to prevail on his claim that the DEBTOR transferred assets with the intent to defraud, hinder or delay creditors under section 727(a)(2), the objector must establish that there was an actual transfer, made with fraudulent intent, of valuable property belonging to the debtor which reduced the assets available to creditors. Here again, POSNANSKI failed to present evidence sufficient to carry his burden of proof.

### *Section 727(a)(7)*

Section 727(a)(7) provides that a debtor's discharge will be denied where the debtor has committed an act specified in subsections (a)(2) through (a)(6) of that provision on or within one year before the date of the filing of the petition, or during the case, in connection with a bankruptcy case of an "insider." 11 U.S.C. § 727(a)(7). Essentially, this provision extends the basis for denial of a discharge to a debtor's misconduct in a substantially contemporaneous, related case. *Matter of Krehl*, 86 F.3d 737 (7th Cir. 1996). In order to deny a discharge under this provision, the creditor must establish (1) the elements of sections 727(a)(2), (3), (4), (5), or (6) are met; (2) the actions occurred during the current case or within one year before the filing of the petition; and (3) the actions are in connection with the bankruptcy case of an insider. *In re Kyung S. Song*, 449 B.R. 84 (Bankr.N.D.Cal. 2011).

In cases in which the debtor is an individual, an insider includes a "corporation of which the debtor is a director, officer, or person in control." 11 U.S.C. § 101(31)(A)(iv). The DEBTOR was the president and sole shareholder and in control of Sports Media, Inc. The bankruptcy petitions, having been filed the same day, do not raise issues of timing. *See In re Sever,* 438 B.R. 612, 619-20 (Bankr.C.D.Ill. 2010). Accordingly, this provision serves to

14

deny the DEBTOR a discharge to the extent he violated any of the applicable subsections of section 727(a) with respect to Sport Media, Inc.'s case.

POSNANSKI contends that the DEBTOR knowingly and fraudulently made false statements in Sports Media, Inc.'s bankruptcy schedules, statement of financial affairs, and at the first meeting of creditors in that case.[6] The answer given by the DEBTOR in the Statement of Financial Affairs in response to Question 3(c), that the only payments made to or for the benefit of insiders within the year preceding bankruptcy were to himself in the amount of $91,000, was false. Where the debtor is a corporation, an insider includes a relative of "a person in control of the debtor." 11 U.S.C. § 101(31)(B)(vi). A relative is further defined as an "individual related by affinity or consanguinity within the third degree." 11 U.S.C. § 101(45). In answer to Question 7 which asks for any gifts made within the previous year and to Question 10 which asks for any transfers, other than property transferred in the ordinary course of the debtor's business or financial affairs, within two years, the DEBTOR'S response was "None."

As previously noted, the TRUSTEE filed a complaint against the DEBTOR'S spouse, Teri Kosth, to recover three separate transfers totaling $16,000, made in April and May, 2009, well within the extended preference period. The TRUSTEE brought a complaint against Anchor Lumber Company to recover two transfers totaling $10,000, as fraudulent conveyances or preferential transfers made within the ninety days preceding the filing of the petition, and obtained a judgment for that amount. The Trustee also brought a complaint against Hillcrest Resort, Inc., his spouse's corporation, to recover two transfers

---

[6] In the complaint, POSNANSKI alleged that corporate bank accounts were open during the year before the bankruptcy filing that were not disclosed on Sports Media, Inc.'s schedules. POSNANSKI introduced no evidence, however, of any other accounts belonging to Sports Media, Inc.

totaling $10,000, made in April, 2009, as fraudulent transfers, settling that claim for $6,000. None of those transfers were disclosed. Those transfers to his spouse, Hillcrest Resort and Anchor Lumber, were all payments to or for the benefit of insiders.[7] In addition to those transfers, some of which were referenced in the emails introduced by POSNANSKI, other emails referenced two other undisclosed transfers totaling $3,200 made to "Sports Media SP" in March and April of 2009. At trial, the DEBTOR claimed to have no knowledge about the identity of that entity or the payments.

In this Court's view, the omission in the sworn papers filed for Sports Media, Inc., of a whole series of payments made by the DEBTOR through his corporation for the benefit of family members and related companies is significant and demonstrates, at the very least, a reckless disregard for the truth, equivalent to fraudulent intent. The timing of those transfers, in the months preceding the filing of the bankruptcy, is indeed suspicious. That is especially true, given the DEBTOR'S admonition to POSNANSKI in late April, that he was putting Sports Media, Inc., in bankruptcy on May 1, 2009. Moreover, the omissions are clearly material, as they relate to transfers which have in fact been avoided by the TRUSTEE for the benefit of creditors. The DEBTOR continued to maintain that his role in Sports Media, Inc., and the petition filed in that case, had nothing to do with his personal bankruptcy and the proceeding brought by POSNANSKI. Consequently, he offered no explanation for his failure to disclose the transfers made to or for the benefit of insiders.

At trial, he contended that the default judgment entered against Teri could be set aside because the payments made to her were in satisfaction of Sports Media, Inc.'s

---

[7]In a motion to modify the judgment entered against it in Adv. No. 10-8101, Anchor Lumber alleged that it was not a creditor of Sports Media, Inc., but of Hillcrest Resort, and that it had filed a mechanic's lien against the real estate of that resort, for work performed, which it released when it received the payment from Sports Media, Inc.

16

obligation based on the lease agreement and loan she obtained to make the home office. By way of justification, the DEBTOR also testified that payments in compensation for his services were sometimes made directly to Teri, who paid household expenses. Although the DEBTOR advised the Court on the first day of trial that he might call his bankruptcy attorney to testify, he did not do so.[8]

The fundamental purpose of section 727(a)(4)(A) is to insure that the trustee and creditors have accurate information at the outset of the case without having to conduct costly investigations. *In re Luby*, 438 B.R. 817 (Bankr.E.D.Pa. 2010). Questions concerning transfers made by the debtor within certain time frames of the filing of the petition, assist a trustee in determining whether any avoidable transfers exist. It is not for the debtor to decide which transfers merit disclosure. A debtor, having sought the shelter of the bankruptcy court, cannot play fast and loose with the rules, which require full and accurate financial disclosure. *In re Tully*, 818 F.2d 106, 110 (1st Cir. 1987); *U.S. v. Ellis*, 50 F.3d 419, 424 n.2 (7th Cir. 1995) (there is a specific federal need for full disclosure by debtors if the bankruptcy system is to work).

Accordingly, the DEBTOR'S discharge will be denied pursuant to sections 727(a)(7) and (a)(4).[9] Because the Court concludes that the DEBTOR'S discharge is denied under sections 727(a)(7) and (a)(4), the Court need not address the issues relating to the

---

[8]To his credit, he did not blame those omissions on his bankruptcy attorney. He did not claim that his attorney failed to explain the nature of the disclosures required or that he disclosed the transfers to his attorney, but failed to notice that they were not included on the Statement of Financial Affairs, which his attorney prepared.

[9]Though the PLAINTIFF alleged in his complaint that the assets of Sports Media, Inc., were diverted or fraudulently transferred during the two-year period prior to bankruptcy, invoking sections 727(a)(7) and (a)(2)(A), he did not include that basis for denial of discharge in the pretrial statement he filed in this proceeding. That pretrial statement was not amended, and supersedes the complaint and establishes the issues to be litigated at trial. *SNA Nut Co. v. Haagen-Dazs Company, Inc.*, 302 F.3d 725 (7th Cir. 2002); *In re Petersen*, 312 B.R. 385 (Bankr.N.D.Iowa 2004). Notwithstanding that result, the Court considers the DEBTOR'S right to a discharge on that ground would be a much closer question. Denial of a debtor's discharge under section 727(a)(2)(A) requires a showing that the debtor intended to defraud or hinder creditors, whereas the Court, in denying the DEBTOR'S discharge under section 727(a)(4), determined only that the DEBTOR made the false statements with a reckless disregard for the truth.

dischargeability of POSNANSKI'S debt.

In this asset case, however, since POSNANSKI'S claim is unliquidated, it may be necessary for purposes of distribution to estimate the amount of the claim for purposes of its allowance. *See* 11 U.S.C. § 502(c). POSNANSKI filed a proof of claim, Claim 27-1, asserting the DEBTOR owed him the estimated amount of $250,000 for damages for breach of contract. For the most part, POSNANSKI failed to prove his claim. He testified that he paid in the initial capital contribution of $20,000, which testimony stands unrebutted. He asserted he contributed a substantially greater sum, over time, for expenses and accounts payable for the business, without bothering to attempt to characterize those alleged sums as contributions to capital or loans. He introduced no evidence, however, documentary or testimonial, that would enable those sums to be quantified. Moreover, the evidence is uncontradicted that POSNANSKI and his girlfriend received compensation for their services as employees and/or consultants. His claim does not allege unpaid wages.

POSNANSKI testified that he personally guaranteed the Southport Bank loan. Yet the evidence supports the conclusion that all, or almost all, of those funds were used with the knowledge and consent of both the DEBTOR and POSNANSKI for business purposes. POSNANSKI alleged, but failed to prove with any specificity, that the DEBTOR embezzled or diverted funds obtained from Southport Bank. The business operated for several years and ultimately failed, but its failure does not trigger the personal liability of the DEBTOR for any and all sums invested or guaranteed by POSNANSKI. POSNANSKI was directly involved in the business, was a signatory on the accounts for most of the time, and was well aware of its assets and liabilities and the problems with certain customers. Because

Sports Media, LLC was never formed, the DEBTOR and POSNANSKI operated the business as general partners. This is not a situation where POSNANSKI was a limited partner or disengaged investor who got taken advantage of by a crooked manager.

POSNANSKI claims that he was harmed by the DEBTOR'S breach of his promise to make POSNANSKI a co-owner of the to-be-formed LLC. But the business failed, so the unformed ownership interest is worthless. Exactly why the business failed was not explained at trial, but it appears to be related to the uncollectible $5M receivable owed by American Enterprise Development Corp. In any event, POSNANSKI failed to prove that the failure of the business was due to any wrongdoing of the DEBTOR.

POSNANSKI also claims that he would not have guarantied the Southport Bank loan if he had known he was not a co-owner of the business. He makes too much of the DEBTOR'S failure to form the LLC. To the extent the preorganization agreement was enforceable, and this Court sees no reason why it wouldn't be, POSNANSKI had the right to compel the DEBTOR to form the LLC and to complete the paperwork granting him the ownership interest he had been promised. So, in effect, POSNANSKI is properly viewed as a co-owner since he possessed the right to become one, the same as if he had held a pre-paid stock option. If the business had been successful, there is no doubt that POSNANSKI would have enforced that right. Because the business failed, however, he now tries to blame the liabilities he voluntarily undertook as an entrepreneur, on the absence of a formalized status of ownership, which he could have compelled at any time. Moreover, he was, in fact, a general partner of the unincorporated business, as provided by the preorganization agreement, owning a 49% interest in the partnership. There is simply no

causal link between any financial loss suffered by POSNANSKI and the DEBTOR'S failure to form the LLC. Assuming, *arguendo*, that the LLC had been formed, the end result – failure of the business – would still have occurred. There is no support for the proposition that the DEBTOR'S failure to form the LLC – whether by design or mere negligence – caused any quantifiable financial loss to POSNANSKI.

The evidence established that the DEBTOR agreed to form Sports Media, LLC and to cause an ownership interest in Sports Media, LLC to be conveyed to POSNANSKI in exchange for POSNANSKI'S capital contribution of $20,000. It is undisputed that the interest was never conveyed. A state court could find that the DEBTOR breached the contract and is liable for the return of POSNANSKI'S contribution. A state court could also find, however, that POSNANSKI received the benefit of his bargain because the funds were used for business purposes and his ownership interest ended up being worth nothing when the business failed. Under these circumstances, this Court estimates POSNANSKI'S claim at one-half of his capital contribution or $10,000.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###